## LANNING *v.* LOCKETT.[*]

(*Circuit Court, S. D. Georgia, W. D.* January 24, 1882.)

1. PLEADING—PLEA IN BAR.

A plea denying title of plaintiff in a suit on a promissory note, and alleging that the note is the property of a citizen of the state in which the suit is brought, and not the property of the plaintiff, although pleaded here in the form and style of a plea to the jurisdiction, is, in reality, a plea in bar.

2. SAME—STATE LAWS.

Such a plea is not demurrable, although filed, without any other plea, in the United States circuit court held in a state, the statute of which provides that a party cannot inquire into the title of a holder of a note except for his protection or to let in some defence.

3. PROMISSORY NOTES—AUTHORITY OF CASHIER TO INDORSE—PRESUMPTION.

In the absence of proof of any regulations curbing or restricting his authority, the presumption is that the indorsement of a negotiable promissory note, belonging to the bank, by the cashier, was authorized, and such indorsement passes the title to the note.

4. COLLATERAL SECURITY—RIGHT OF HOLDER TO SUE.

The *bona fide* indorsee of a negotiable promissory note, who takes it as collateral security for a pre-existing debt, is a holder for a valuable consideration, and may maintain suit thereon in the United States courts; and the right to sue is not invalidated by the fact that the note was transferred to such indorsee (a citizen of another state) for the purpose of enabling him to sue thereon in the United States courts.

Suit by plaintiff against defendant, B. G. Lockett, on a promissory note for $6,000. It was payable to order of Macon Bank & Trust Company, and indorsed to plaintiff by J. W. Cabaniss, cashier.

The defendant filed a plea in the form and style of a "plea to the jurisdiction," alleging that the note sued on was not the property of the plaintiff, but the title to the note was in the Macon Bank & Trust Company, a corporation having its legal domicile in the western division of the southern district of Georgia, and that the transfer thereof by the Macon Bank & Trust Company, the payee, to the plaintiff, a citizen of New York, was purely colorable, and for the mere purpose of enabling the plaintiff to bring suit in the United States court. No other plea was filed.

Plaintiff demurred to the plea on the ground that by section 2789 of the Code of Georgia, and decisions of the supreme court of Georgia thereon, the defendant could not inquire into the title of a *bona fide* holder of the note except to let in some defence, and that, inasmuch as no other defence was set up in this case, the defendant could not make an issue on the plaintiff's title to the note.

[*]Reported by W. B. Hill, Esq., of the Macon bar.

The evidence as to the transfer of the note by the Macon Bank & Trust Company to the plaintiff was, in brief, as follows:

J. W. Cabaniss, cashier of the Macon Bank & Trust Company, was sworn by the defendant, and testified that he, as cashier, "made the transfer of the note for the Macon Bank & Trust Company to the plaintiff. The Macon Bank & Trust Company is in liquidation. It has ceased to do business, and all its affairs are in charge of the president, Mr. G. B. Roberts, and myself, as cashier. I made the transfer of this note to the plaintiff after consultation with Mr. Roberts. The directors of the Macon Bank & Trust Company were not consulted about it. It is not customary for the president and myself to consult them. They have left to us the winding up of the assets of the bank. For the note, Mr. Roberts paid me his check on the Exchange Bank for $3,000 at the time of the transfer in 1879. I am also cashier of the Exchange Bank, and Mr. Roberts is a director of that bank. The check for $3,000 I have never collected. It is among the assets of the Macon Bank & Trust Company. Roberts has always had enough money in the Exchange Bank to pay the check, except, perhaps, occasionally his deposit may have run below that amount; but the Exchange Bank would have paid the check at any time. Roberts has no control whatever of the check. There is no agreement that the check shall not be collected. There is no entry of this transfer on the books of the Macon Bank & Trust Company. There are a great many transactions of the company not yet entered up on the books; but I have *data* from which I can post them all up."

Benjamin G. Rockett, the defendant, was also sworn, and testified that at the time of the maturity of the note he was abundantly solvent, and worth largely more than the amount of the note.

G. B. Roberts, sworn for plaintiff, said: " I was indebted to the plaintiff in 1879 to the amount of $8,000. I gave her a mortgage on realty to secure $5,000, and gave to her as collateral security for the remaining $3,000 the note now in suit, for which I gave the Macon Bank & Trust Company my check for $3,000; at the same time (March, 1879) I had the cashier of the company indorse the note to the plaintiff. I do not remember whether the plaintiff ever had the note in possession. It was turned over to Bacon & Rutherford, attorneys at law, with a letter from her. She is my niece. If the plaintiff should get judgment in this case and collect the whole amount of the note from the defendant, I am under no obligation to pay back to the Macon Bank & Trust Company the excess of that amount over $3,000, for which I gave my check. At the time I gave the check, which was for about 50 per cent. of the amount of the note, there were doubts about the solvency of the defendant; at least, it was known that he was heavily in debt. While under no obligation, I would not be willing as president to make a profit out of the bank, and I should pay to the bank the excess of the recovery over the $3,000."

The court held that the plea in this case, although filed as a plea to the jurisdiction, was in reality a plea in bar, being, in substance, a denial of the plaintiff's title and right to sue, and overruled the demurrer to the defendant's plea on the grounds that the contract of

the maker of a negotiable note is to pay it to whomsoever may be the legal holder, and that the local law of Georgia cannot be applied to this case so as to shut off the defence made by this plea.

ERSKINE, D. J., (*charging jury.*) This note is indorsed to the plaintiff by the cashier of the Macon Bank & Trust Company. It is the usual course that the cashier of a bank has power to indorse negotiable instruments belonging to the bank. The presumption is that he has the right and authority to make such indorsements, in the absence of any evidence that the regulations of the bank have limited or abrogated this authority.

The evidence is that the cashier delivered to Mr. Roberts, the president of the bank, and that Roberts gave him therefor his check on the Exchange Bank for $3,000, about 50 per cent. of the face of the note, and that this check still remains in the possession of the Macon Bank & Trust Company. This check has not yet been paid, but the liability of Roberts is the same, and if he gave the check *bona fide* for the note it was a payment therefor.

The note is presented to you by counsel for the plaintiff. This makes out for the plaintiff a *prima facie* case. There is no evidence showing that the plaintiff ever had the actual possession of the note. This was not necessary, if it was indorsed to her *bona fide*, and she was aware of it, as a collateral security for a pre-existing debt of Roberts to her. If thus indorsed to her, she obtained as good a title as if she had purchased it.

No party can obtain the right to sue in the United States courts by a device, or colorable transfer. If the plaintiff has no title to the note, we will find for defendant on this issue. You will inquire whether the *prima facie* case of the plaintiff has been overcome by any evidence that the transfer to her was not *bona fide*. If it was *bona fide*, she has the right to sue, although Roberts indorsed it to her for the purpose of giving the court jurisdiction by enabling her to maintain the suit.

Verdict for the plaintiff.